Corn, J.
Heard on error.
The ease of Cora D. Burton against the Board of Education of Elizabeth Township is here on error from the decision and judgment, based on the verdict of a jury, of John Henry, a justice of the peace of said township.
The plaintiff in error, who was a teacher in the public schools of that township, was plaintiff below, and brought the action against.the board of education to recover the compensation allowed teachers for attending county institutes, under the provisions of Section 4091 of the Revised Statutes of Ohio. No answer to the plaintiff’s bill of particulars was filed before the justice but, as gleaned from the bill of exceptions taken, the defendant interposed two defenses: First. That one of the conditions in plaintiff’s contract of employment was that she ivould not exact or demand in any way, or accept pay for attending the teachers’ institute. Second. That she had not presented *295 the certificate prescribed in said' section as provided by law.
A trial to a jury was had; verdict for defendant; motion for new trial overruled; judgment rendered upon the verdict; a bill of exceptions taken, allowed and signed, and a petition in error filed in this court. Several assignments of error appear in the petition in error, only two of which .are necessary to decide the questions at -issue.
First. On the return day of the summons, at the time fixed for trial, both parties being present, the justice called the action for trial, and without objection called and swore two witnesses ■for plaintiff. Thereupon, and then for the first time, defendant demanded a jury. The plaintiff objected on the ground that the demand came too late. The justice overruled the objection; plaintiff excepted, and the jury was struck in the usual way. The plaintiff in error assigns this as a ground of prejudicial error. Remembering that the amount in controversy was but $11.25, it will readily be seen that a trial by jury deprives plaintiff of a substantial right to which she would otherwise be • entitled if tried by the justice, namely, the right of appeal. It left plaintiff’s cause absolutely in the hands of local bias or prejudice, should any exist.
Section 6545 of the Revised Statutes of Ohio provides:
“At the time appointed for trial, if no jury shall have been demanded by either party, the justice shall proceed to try the action, shall hear the proof and determine the case according to law and the right. ’ ’
The language is “shall proceed to try the action, shall hear the proofs,” etc. Now, the first step in the trial of an action before a justice, before the justice can hear the proofs, plaintiff’s witnesses must be sworn.
Section 6547 provides:
‘ ‘ In all civil actions, after '.the appearance of the defendant and before the court shall proceed to inquire into the merits of the cause, either party may demand a jury to try the action,” etc.
In this section the language is “before the court shall proceed,” etc. Now, what does the word “proceed” mean in these sections ? To the mind of the court it means, and the court *296 understands it to mean, “to take any steps,” “to go forward”; and when the justice in this case, without objection, after the appearance of the defendant at the time appointed for trial and no jury having up to that time been demanded, had sworn two witnesses in the case, he had taken steps to hear and determine the action; he had proceeded into the trial of the case and it was then too late for either party to demand a jury, and the granting of the demand by the justice at that time deprived the party of a substantial right, that of an appeal, and is prejudicial error.
Second. Another assignment of error is that the justice erred in his charge to the jury.
There is some question in this state whether a justice is required to instruct a jury; but there is no doubt and no question that if he instruct the jury, he must instruct them correctly, and such instruction, if given, is reviewable on error. Hirth v. Graham, 50 O. S., 57.
At the top of page 62, the Supreme Court says:
“Without passing upon the question of the duty of a justice of the peace to give to the jury a sound and pertinent legal proposition when he is so requested, we hold that if he does instruct them, whether pursuant to a request or not, he is bound to lay down the law correctly, for a jury are quite likely to respect the official character of the justice and be influenced by the instructions that he may give to them under the sanction of his office.”
Upon the written request of plaintiff, and before argument, the justice gave the following instructions to the jury:
“If the jury find from the evidence that said plaintiff taught one of the public schools of Elizabeth township, Lawrence county, Ohio, for the period commencing on or about the month of September, A. D. 1906, that she was properly authorized by certificate to teach in the public schools of said county, that within three months prior to the commencement of said term of school she attended the county teachers’ institute for a full week and has presented a proper certificate showing that fact to said board, and has asked that said board pay her for said attendance at said institute one-fourth the amount paid her for teaching the first month of said school in said township, that said board paid said plaintiff the sum of forty-five dollars for teaching school for said first month, and that said board has not paid *297 said plaintiff for said week’s attendance at said institute, it is your duty to and you should bring in a verdict for plaintiff in the amount asked for, notwithstanding that you may find that said plaintiff, prior to the attendance of said institute and the commencement of said school, signed a written promise not to ask pay for attendance at said institute.”
And after argument the justice charged the jury as follows:
“Gentlemen of the jury: You have heard the evidence in this case. You have -heard the argument of the counsel, and, to my judgment, there are just two things for you to consider in this matter. You have heard the law. Are you satisfied with the reading of the law? If not, I’ll read it again. You have paid attention to counsel when he was reading this law? (By a juror: “We did.”) The law says that these teachers shall have pay for attending the institutes. Well now you know the law, yourself, on this matter and you have heard the evidence in regard to the contract that they entered into when they hired to teach these schools. Now, the matter for you to consider in your minds, and I won’t take your time up in trying to add anything, but simply just to give you the two facts that you are to- decide on today: whether or not they are to have pay for attending these institutes, because - the law says so, or whether these contracts are valid. That is the question for you to.settle in your mind. If you find that the ’ contracts are hot valid contracts, and it is not a valid contract and that they ought to be paid, you will return a verdict in favor of the plaintiff. And if you consider in your mind, after hearing the evidence in this case, that these contracts ought to be valid and are valid, then you will return a verdict in favor of the defendant. ’ ’
Thereupon, counsel for defendant requested the court as follows :
“I would like for the court to instruct them about presenting the claim; that they are required to present their certificate. I would like for the court to instruct the jury that they must find the certificate was properly presented to this board before the plaintiff can recover.”
Tn pursuance of such request, the court said to the jury:
“Well, that is a matter for you to consider, whether or not you think that Miss Burton, the plaintiff in this case, did present her certificate to the proper authority. I believe that is all.”
It will be noted that the justice, in this latter charge as to the presentation, did not tell the jury what would be a proper pro *298 sentation of the certificate nor who the proper authority was to whom it should be presented. Counsel for plaintiff saved his exceptions to the general charge.
The charge given before argument and that given after argument, on the question of the alleged contract, are inconsistent. In one, the justice tells the jury, in so many words, that it has no force; in the other, he tells them that if the contract ought to be valid and is valid, they must find for the defendant. In the one charge, he tells the jury it is not valid; in the other, he tells the jury to ascertain whether it is valid and goes further and says that the jury must find for the defendant if “it ought to be valid and is valid.”
Now, one of these charges stated the correct rule of law and the other did not. If the jury followed the correct rule, then the plaintiff was not prejudiced by the charge. It is evident that the jury found-the contract valid, or, that the jury found that the plaintiff did not properly present her certificate.
Which is the correct charge with reference to the contract depends upon whether the contract attempted to be enforced by the defendant against the plaintiff is against public policy, and whether the plaintiff could waive the provisions of the statute. The agreement is as follows:
. “Elizabeth Township, April 18, 1906. I hereby agree to teach the school assigned to me and will not exact or demand in any way,- or accept pay for attending the teachers’ institute. Signed, Cora D. Burton.”
The minutes of the meeting, read in evidence, show (touching the action of the board in hiring the teachers at this time) : Question. “Read what the minutes shows as to the hiring of the teachers.” The answer is quoted as from the minutes: “The following teachers were selected to teach the coming term providing they would not exact or demand in any way pay for attending the teachers ’ institute. ’ ’
The witness, A. H. Smith, a member of the board of education, testifies as follows:
“Q. State to the jury whether these conditions were made known to Miss Burton before she was hired. A. Yes, they all knew it. They needn’t say they didn’t know it, for they all *299 knew it and come twenty-five miles to get a school, and they knew it beforehand. Mr. Burton himself came to my house and insisted on us hiring two of his daughters, and that was the understanding then. They all knew it and they needn’t say they didn’t know it, for they did.
“Q. Did Miss Burton object to the condition? A. Why, no, she didn’t object at all, only she said this: She says, ‘I don’t like to sign that. ’ I says, ‘Do you think it’s right to take it away from the children — money from the children, for you to have a jollification in town, or a reunion among the teachers?’ I said this, ‘You don’t have to sign it.’ We didn’t compel anybody to sign it. ’ ’
The answer of this witness discloses the opinion which he, at least, as a member of this board of education has of the teachers’ institute and its objects and purposes.
The court is familiar with the case of Krause v. Morgan, 53 O. S., 26, wherein it is held that a person.may waive the provisions of a statute made for his protection; and if this statute under consideration is passed solely for the benefit of the teachers, then, under the holding in the Krause case, the plaintiff in error may waive its provisions and, under this agreement, did waive the provisions, if it were in her power to do so. But the plaintiff can not waive the provisions of this section if it is against public policy. Whether the statute is designed primarily for the pecuniary benefit of teachers, or for the benefit of the public by bettering the public schools and the means of education, is the principal question to be determined. Ohio is one of the foremost states in the Union in the encouragement of public education through the instrumentality of her common schools.
The ordinance of 1787,, organizing the northwest territory of which Ohio forms a part, provides:
“Article 111. Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged. ’ ’
And when Ohio was admitted into the Union, as a part of her fundamental law the Constitution of 1802 provided, in t-he last sentence of Section 3. of Article VIII, in the Bill of Rights, as follows:
“But religion, morality and knowledge being essentially necessary to good government and the happiness of mankind, *300 schools and the means of education shall forever be encouraged by legislative provision not inconsistent with the rights of conscience. ’ ’
And in the Constitution of 1851, the last sentence of Section 7 of Article 1, in the Bill of Rights, this language appears :
“Religion, morality and knowledge, however, being essential to good government, it shall be the duty of the General Assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction.”
In pursuance of this constitutional authority, the Legislature of Ohio has from time to time provided for the organization and the conducting of county teachers’ institutes, in and by the provisions of Sections 4086-7-8 and 9. Section 4086 states the object of the county teachers’ institute, “the purpose of which shall be the improvement of such teachers in their profession.”
These institutes are controlled by the provisions of the law in so far that the funds of the teachers ’ institute are required to bo deposited in the county treasury; and Section 4090 provides that if no teachers ’ institute shall be held in any county for two years the state school commissioner may hold or cause to be held such institute; the state taking enough interest in the improvement of the teachers in their profession as to require its state school commissioners, if the teachers themselves neglect this important feature of their means of education, to. take 'charge of and hold the teachers’ institute, or cause it to be held.
Section 4091 is the.section under investigation, and provides that the teachers may receive compensation for their attendance upon the teachers’ institute, the same to be paid as an addition to the first month’s salary after said institute. These sections, I believe, were first enacted and found in Yol. 70, p. 195 of the Ohio Laws. The validity of this Section 4091 has been passed upon (by a rather liberal construction, too) by the Supreme Court in the case of Beverstock, Tax-payer, v. The Board of Education, reported in 75 O. S., 144. The syllabus of this case is as follows:
“Where a board of education has employed teachers for the public schools of the district, -for the year next ensuing there *301 after, and such, teachers during vacation, after their employment, attend the county .institute during the week it is held in the same county, said board is authorized, by the provisions of Section 4091, Revised Statutes, to pay them for the institute week as an addition to their first month’s salary as fixed by the terms of their employment and at the same rate, on presentation of the certificates prescribed by said section.”
It is manifest that the Legislature has for many years regarded the teachers’ institute as “a means of education,” and ■it is the opinion of the court that the object of the statute in question is the betterment of the schools, by making better teachers, through their attendance at the institute; and the compensation is intended as an inducement to procure their attendance thereat, and any contract or arrangement tending to keep teachers away, that has as a natural result that effect, is contrary to public policy, illegal and void.
The Supreme Court, in passing upon contracts against public policy, in the case of Salt Co. v. Guthrie, 35 O. S., 672, say:
‘' Courts will not stop to inquire as to the degree of injury inflicted upon the public. It is enough to know that the inevitable tendency of such contracts is injurious to the public.'”
The 9 Cyclopedia of Law and Procedure, on the subject of waiver of statutory provisions, says, at p. 480:
“A person may lawfully waive, by agreement, the benefit of a statutory provision, but there is an imputed exception to this general rule in the case of a statutory provision whose waiver would violate public policy expressed therein, or where the rights of third parties which the statute was intended to protect, are involved. ’ ’
At page 483 the same authority says:
“If an agreement binds the parties, or either of them, or if the consideration is to do something opposed to the public policy •of the state or nation, it is illegal and absolutely void, however solemnly made. If the court should enforce such agreements, it would employ its functions in undoing what it was created to do. It is not easy to give a precise definition of public policy. It is, perhaps, correct to say that public policy is that principle of law which holds that no person- can lawfully do that which has a tendency to be injurious to the public or against the public good; -which may be designated, as it sometimes has been, the *302 policy of the law or the public policy in relation to the administration of the law. Where a contract belongs to this class, it will be declared void, although in the particular instance no injury to the public may have resulted. In other words, its validity is determined by its general tendency at the time it is made, and if this is opposed to the interests of the public, it will be invalid, even though the intent of the parties was good and no injury to the public would result in a particular case. The test is the evil tendency of the contract and not its actual injury to the public in a particular instance.”
So that, in the opinion of the court, the inevitable tendency of this contract was to keep the teachers from attending and receiving the benefits of the institute, and the plaintiff could not, by her contract, waive the provisions of the statute, and the contract is against public policy and void. The justice’s charge, therefore, before the argument, was the correct one, and he erred in the charge given after argument in that respect.
Now, as to the question of the presentation. This gave the court more trouble than any other question in this ease. The statute is silent as to where or to whom the certificate shall be presented. The language is: “Upon the teacher’s presenting
a certificate of full, regular, daily attendance at said institute, signed by the president and secretary thereof.” Applying the evidence most favorable to the board of education, its clerk, Mr. M. C. Smith, says with reference to the presentation:
“Q. Did Cora D. Burton present to you this paper which I now hand you, or one like it? (Handing the witness the certificate issued to the plaixxtiff by the president and secretaxy of the institute). A. She handed xxxe one that looked like this. I don’t know whether this is the one or not, but I think those are the naxxxes that were on the paper. She eaxne to the office where I was at work and handed xne that.
“Q. When this certificate was presented to yoxx, Mr. Smith, what did you do with it? A. I told Miss Bxxx’ton I was sorry, but I couldn’t write her an order for it.”
The plaintiff, on page 8, testifies with reference to the presexitation, as follows:
“Q. You attended that institute, did you not? A. I did.
“Q. State to the jury whether you presented the cex’tificate which has been marked Exhibit A and introduced in evidence, to the clerk of the board of edixcation, and asked that an order *303 be drawn in your favor on it. A. Yes, sir; I presented this to the clerk of the board.
“Q. And what statement, if any, did the clerk make to you? A. Mr. Smith was busy at his desk in his office when I went; working on his books. I went in and spoke, ‘Good morning, Mr. Smith.’ And he spoke, ‘Good morning, Miss Burton.’ And he says, ‘ I suppose another school teacher for some money. ’ And I said, ‘Yes, sir.’ So T took this certificate out and unfolded it, and laid it down on the desk beside him,, and he' says, ‘ Just in a minute, Miss Burton.’ lie finished his accounting, turned and picked up the certificate and read it over, and he says, ‘For institute pay?’ I says, ‘Yes, sir.’ And he says, ‘Well, I’m sorry, Miss Burton, but I can’t do anything for you there.’ I said, ‘Is that so?’ He says, ‘Yes, ma’am.’ I said, ‘Did the board decide at its last meeting not to pay them ? ’ And he says, ‘Yes, ma’am,’ so I just picked up the certificate and walked out, and that’s all that was said.”
There is no question, then, as to the manner of presentation. It was presented to the clerk of the board of education. The law requires the payment to be made; the amount to be paid is fixed by the contract for teaching, and is to be paid in addition to the first months’ salary. Manifestly, then, it is to be paid in the same manner and by the same officer as the first months ’ salary. On page 1 of the bill of exceptions, the clerk of the board testifies with reference to the payment of teachers, as follows:
“Q. As clerk, Mr. Smith, state what, if any, are your duties with respect to the manner in which the teachers are paid for teaching in the township. A. Well, the teachers are supposed to present a voucher signed by the director of the sub-district in which they are teaching, and he certifies they have taught the number of days they claim, and the board of education are supposed to and do vote ‘yea’ and ‘nay’ as to whether I write an order for the amount claimed.
‘‘Q. Then, if you are authorized to draw the order, state to this jury, so we will understand you, what it is you give to the teacher. A. Well, I write them an order on the treasurer of the school funds for the amount, and this order then is signed by me, and signed by the president of the board of education, and then the treasurer pays them. ’ ’
On page 2;
“Q. Does your board of education meet every month? A. No, sir; not all the time they don’t.
A. B. Johnson and A. J. Layne, for plaintiff in error.
L. B. Andrews, Prosecuting Attorney, for defendant in error.
“ Q. If the teacher teaches the full month, and presents an order from the sub-director showing she has, do you hold that until the board of education meets? Do you hold that until the board of education meets before you issue their order on the treasurer? A. No, sir. The way we do that, that matter came up, and the board voted to allow me to write these orders if they presented this voucher, signed by the director that their claim was just. They voted on that as a whole, that I could write orders for teachers’ pay without a meeting of the board.”
So that if, by the presentation of the voucher from the sub-director, by express action, this board of education authorizes the clerk to draw an order for the pay; and upon the presenta: tion of a certificate from the president and secretary of the teachers’ institute the board of education is required to add so much to the first month’s pay, it seems to me that this board of education, by its action, is estopped from raising this question of presentation. So that whether the presentation was or was not sufficient, the board can not raise the question, on account of its method of doing business.
Aud whether the requirement of the board of education as a condition to employing these teachers that they should not ask any institute pay made it unnecessary to present the certificate, it is not necessary to decide here.
The court is of the opinion that, in view of the action of the board at the time of employing these teachers, and the opinion, as expressed by one of its members, that this board of education has of the object and purposes of teachers’ institutes, and the experience of Miss McFann with her certificate before the board as disclosed by the bill of exceptions, that it made the presentation to the board of education unnecessary. However that may be, the court holds the presentation was sufficient, under the peculiar circumstances of this case; so that, under the view the court has of this case, the judgment of the justice of the peace must be reversed, and the cause retained here for trial.